# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**DAPHNE LOU PARSHLEY**

       Plaintiff,                                                    Civ. No. 3:15-cv-00692-CL

    v.                                                                                     **ORDER**

**COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,**

       Defendant.

_____

MARK D. CLARKE, Magistrate Judge.

    Plaintiff Daphne Lou Parshley ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income under section 1614(a)(3)(A) of the Social Security Act. For the reasons below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## BACKGROUND

    Plaintiff was born September 11, 1951, and is currently 64 years old. Tr. 36. Plaintiff is married and has spent the better part of her life gainfully employed accruing earnings every quarter for 21 years prior to the onset of her alleged disability. Tr. 153-54. Plaintiff has a high school education, and has worked as both a semi-skilled and skilled employee in the secretarial and customer service professions. Tr. 36, 53.

In July 2011, Dr. Robert R. Davies began treating Plaintiff for lower back pain with some right leg sciatic discomfort, and diagnosed her with lumbar strain, most likely from disk disease. Tr. 273-74. Dr. Davies referred Plaintiff for physical therapy, which she began July 23, 2011, and continued until September 16, 2011. Tr. 220, 223, 274.   In August, 2011, Dr. Davies completed a restriction form for Plaintiff's employer's disability insurance carrier. Tr. 284. Plaintiff attempted to return to work on a limited three hour per day work schedule in September 2011, but was unable to continue. Tr. 250.  In October, 2011, Plaintiff had a CT scan revealing several levels of degenerative disc disease, spondylosis, and a possible L4-5 extra forminal broadbased disk herniation with possible L4 nerve root compression. Tr. 230.  Plaintiff consulted with a back specialist, Dr. Daniel C. Rohrer, who recommended significant weight loss due to Plaintiff's severe obesity. Tr. 231. He discussed exercises like stationary cycling and water aerobics for weight loss because Plaintiff's pain was somewhat exacerbated by standing and walking. *Id.* Dr. Rohrer indicated that if Plaintiff lost weight and still experienced pain, FACET injections may be considered. *Id.* Dr. Rohrer also indicated that, while Plaintiff was not a candidate for neurosurgical intervention, bariatric surgery may be considered if Plaintiff was unable to lose the weight. *Id.* Plaintiff attempted physical therapy for a second time in late January 2012, but only completed the initial intake exam before discontinuing the treatment. Tr. 339-48.

On January 19, 2012, Plaintiff filed an application for Supplemental Security Income benefits, alleging disability beginning July 9, 2011. Tr. 19. The claim was denied on March 28, 2012, and again on June 12, 2012. *Id.* Thereafter, Plaintiff filed a request for a hearing. *Id.* The hearing was held before an Administrative Law Judge ("ALJ") on August 27, 2013, and the ALJ issued his unfavorable decision on September 13, 2013. *Id.* On February 26, 2015 the Appeals

Council denied Plaintiff's request for review, making the ALJ's denial the Commissioner's final

decision. Tr. 1. This timely appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20

C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following

series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.
2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless
    expected to result in death, an impairment is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted
    or must be expected to last for a continuous period of at least 12 months.
    20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe
    impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);
    416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
    proceeds to step three.
3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
    then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);
    416.920(a)(4)(iii). If the impairment does not meet or equal one or more of

the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's Residual Functional Capacity ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ found:

Page 4 – ORDER

1.  Plaintiff had not engaged in substantial gainful activity since July 9, 2011, the
    alleged onset date. Tr. 21.

2.  Plaintiff had the following severe medically determinable impairments:
    lumbar spine degenerative disc disease with pain, morbid obesity, type II
    diabetes mellitus, and osteoarthritis of the bilateral knees (20 CFR
    404.1520(c)). Tr. 21.

3.  Plaintiff did not have an impairment or a combination of impairments that
    meets or medically equals the severity of one of the listed impairments in 20
    CFR Pt. 404, Subpt. P, App. 1 (20 CFR 404.1520(d), 404.1520(d) and
    404.1526). Tr. 22.

    a.  Plaintiff had the RFC to perform sedentary work as defined in 20 CFR
        404.1567(a) except the claimant is able to lift and carry up to ten pounds
        occasionally, and lift and carry a negligible amount of weight frequently in
        sedentary work as defined by the regulations. She can stand and walk for
        30 minutes at a time. She must be allowed to sit or stand alternately at
        will, during which period she may remain on task. She may occasionally
        climb ramps and stairs, balance, stoop, kneel, and crouch, but may never
        climb ladders, ropes, and scaffolds, or crawl. She must avoid more than
        occasional exposure to extreme cold, vibration, and hazards such as
        dangerous machinery and unsecured heights. Tr. 22.

4.  Plaintiff was capable of performing past relevant work as a customer service
    representative because this type of work does not require the performance of
    work-related activities precluded by the claimant's residual functional
    capacity (20 CFR 404.1565). Tr. 26.

5.  Because the ALJ found Plaintiff was able to perform past relevant work in
    step 4, the ALJ did not assess step 5 of the analysis.

Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper

legal standards and the legal findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Batson v. Comm'r.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v.*

*Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere

scintilla, but less than a preponderance," or more clearly stated, "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler,* 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson,* 359 F.3d at 1198 (citing *Andrews* 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Additionally, a reviewing court "cannot affirm the Commissioner's decision on a ground that the Administration did not invoke in making its decision." *Stout v. Comm'r.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues the ALJ erred by improperly determining her RFC by (1) finding Plaintiff not credible; and (2) failing to take into consideration the opinion of Plaintiff's treating physician, Dr. Robert R. Davies.

## SUMMARY

In determining Plaintiff's RFC the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. Tr. 23. However, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible. *Id.* As discussed below, this was in error. Additionally, in determining the RFC the ALJ erred by failing to take into consideration the opinion of Plaintiff's treating physician, Dr. Davies. The Appeals Council concluded this error was harmless. The court concludes this was not a harmless error because the ALJ's review of Dr. Davies's opinion may have altered the outcome of this case. The ALJ's decision is therefore vacated and the case is remanded for further proceedings.

I.    **The ALJ did not provide clear and convincing reasons, supported by specific evidence, to discount Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of her symptoms when determining her RFC.**

Plaintiff testified that she was unable to walk more than five minutes and that she spent most of her time in a reclined chair due to her debilitating back, leg, and knee pain. Tr. 38-40. The ALJ determined that these statements regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms were not credible for three reasons: (1) Plaintiff's subjective statements above were inconsistent with the treatment record; (2) Plaintiff stopped pursuing physical therapy without explanation, despite overall improvement; and (3) Plaintiff's daily

activities were not consistent with such severe limitations. However, the ALJ has not provided

clear and convincing reasoning to support these conclusions.

### a. Plaintiff's subjective complaints regarding her limitations are consistent with the treatment record.

When a plaintiff has medically documented impairments that could reasonably be

expected to produce some degree of the symptoms complained of, and the record contains no

affirmative evidence of malingering, "the ALJ can reject the [plaintiff's] testimony about the

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the plaintiff is

not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what

evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th

Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to

conclude that the ALJ did not arbitrarily discredit the [plaintiff's] testimony." *Orteza v. Shalala*,

50 F.3d 748, 750 (9th Cir. 1994).

First, the ALJ determined that Plaintiff's subjective statement that she was unable to walk

through a supermarket without increased pain was inconsistent with the physical therapy record.

Tr. 23. However, upon review of the record, Plaintiff's statements appear consistent with the

therapist's treatment notes. In the physical therapy notes from July 15, 2011, Plaintiff reported

her lower back pain was "about the same as the initial eval[uation]," and that walking any

distance aggravated her lower back pain. Tr. 237. In the physical therapy notes from August 10,

2011, Plaintiff reported that her back was feeling about the same. Tr. 253. Additionally, while

the physical therapy reports suggest that she had made some small improvements, she was not

completing exercises symptom free as the ALJ indicated in his decision. Tr. 248. Rather, the

therapist reported on August 23, 2011, that "[plaintiff] is now able to ambulate up to [one-

Page 8 – ORDER

quarter] mile with symptoms" and "[plaintiff] now manages all care [with] some increased symptoms." Tr. 248. The therapist also reported on September 16, 2011, that Plaintiff complained of increased pain during the exercises. Tr. 260. These physical therapy reports directly contradict the finding that Plaintiff's statement was inconsistent with the record. Thus, the ALJ's reasoning here and the evidence he relied upon to discredit Plaintiff is not clear and convincing.

Second, the ALJ found that Dr. Rohrer's objective observations and his recommendation Plaintiff lose "significant weight," was "strong and persuasive evidence that Plaintiff's impairments [were] limiting, but not so severe as to preclude her from all work activity." Tr. 24. Dr. Rohrer objectively diagnosed, "several levels of degenerative disc disease and spondylosis as well as a possible L4-5 extra foraminal broadbased disk herniation and possible L4 nerve root compression." Tr. 230. He objectively noted Plaintiff walked with a waddling gait, had decreased range of motion in her neck, negative straight leg raises, full range of motion in her hips, decreased back flexion and extension, and was able to walk easily on her heels and toes. Tr. 24. Dr. Rohrer recommended that Plaintiff lose "significant weight," and suggested water aerobics and riding a stationary bike to complete this weight loss because her pain was "somewhat exacerbated by standing and walking." Tr. 24, 231.

However, the ALJ does not explain how these observations relate to Plaintiff's ongoing back, leg, and knee pain. Nor does he explain how these observations indicate Plaintiff's impairments are not so severe as to preclude her from work. Without this necessary link between Dr. Rohrer's observations and the finding Plaintiff's limitations were less severe then she alleged, the ALJ's reasoning for discrediting Plaintiff, and the evidence he relied upon, is not clear and convincing.

### b.  Plaintiff's failure to continue physical therapy treatment is not a clear and convincing reason to discount Plaintiff's testimony.

In determining the plaintiff's RFC, the ALJ may consider objective medical evidence and the plaintiff's treatment history, as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. Moreover, exaggerating complaints of pain in order to receive prescription pain medication provides a clear and convincing reason to conclude that plaintiff was not credible. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

Here, there is no indication in the record that Plaintiff is exaggerating complaints of pain in order to receive prescription pain medication. Instead, the ALJ determined that Plaintiff was not credible because she stopped pursuing physical therapy treatment without explanation, despite overall improvement. Tr. 23. As discussed above, while Plaintiff was improving, she was not completing the therapy symptom free, even reporting increased pain during the exercises. Tr. 260. Plaintiff testified that "PT was too aggressive and only aggravated [her] LBP," Tr. 341, and that she'd "literally get sick over the idea of the pain they were going to put [her] in," Tr. 38. Plaintiff's failure to continue physical therapy is potentially damaging to her overall claim for disability and should be evaluated on remand. However, given that the record does not conflict with Plaintiff's subjective statements regarding her pain, it is not clear and convincing that her failure to continue physical therapy should fully discredit Plaintiff.

### c.  Plaintiff's daily activities are consistent with her reported limitations.

The ALJ may consider the plaintiff's daily activities, work record, and the observations of third parties with personal knowledge about the plaintiff's functional limitations. *Smolen*, 80 F.3d at 1284. If a plaintiff's daily activities "are transferable to a work setting" or "contradict claims of a totally debilitating impairment," performance of those activities may serve as a basis

Page 10 – ORDER

for discrediting a plaintiff. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012).

Disability plaintiffs should not be penalized for attempting to lead normal lives in the face of their limitations. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). A disability plaintiff need not "vegetate in a dark room excluded from all forms of human and social activity" in order to be deemed eligible for benefits. *Cooper v. Bowen,* 815 F.2d 557, 561 (9th Cir. 1987) (quoting *Smith v. Califano*, 637 F.2d 971 (3d Cir. 1981)). *See also, Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (many home activities may not be easily transferable to work environment, where it might not be possible to rest periodically or take medication.).

Evidence from "other sources," including other non-medical sources, such as spouses, parents, caregivers, relatives, friends, neighbors, and clergy, may be used to show the severity of a plaintiff's impairments and the affect these impairments may have on the plaintiff's ability to work. 20 C.F.R. § 404.1513(d). In order to reject evidence from "other sources," the ALJ must give germane reasons for doing so. *Molina*, 674 F.3d at 1111.

Here, the ALJ determined that Plaintiff's daily activities were inconsistent with her claimed limitations. Tr. 25. The ALJ based his reasoning on Mr. Parshley's testimony. Mr. Parshley, the Plaintiff's husband, testified that Plaintiff is able to care for herself, complete daily chores, and handle the finances, although he indicates that everything takes her longer to complete. Tr. 190-92. Mr. Parshley testified that Plaintiff sometimes "spends 20 hours or more in [the recliner] between sleeping and resting when she attempts house work of the most moderate type." Tr. 196. Even though Mr. Parshley's testimony was generally consistent with Plaintiff's, the ALJ found his testimony to be of limited value because "even if one accepts [Mr. Parshley's] observations as completely true, they do not describe symptoms or limitations so severe as to preclude the [plaintiff] from working a job consistent with the [RFC]." Tr. 25.

Page 11 – ORDER

However, the ALJ's finding here is contradicted by the testimony of the vocational expert. The vocational expert testified that there is no vocation that would allow Plaintiff to sit reclined or have her legs elevated for one-third of the day. Tr. 55. Thus, if it is taken as true that Plaintiff spends most of her day in a recliner, Plaintiff does have such severe limitations that would preclude her from work.

### d. There is no evidence of malingering, and Plaintiff has exhibited an exemplary work history.

Finally, in determining the plaintiff's credibility, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying and prior inconsistent statements concerning the alleged symptoms. *Smolen*, 80 F.3d at 1284. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairment. *Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980). However, when a plaintiff's work history undercuts her assertions, the ALJ may rely on that contradiction to discredit the plaintiff. *See, e.g.*, *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (plaintiff was discredited because he testified he left his job because he was laid off, rather than injured).

The record shows no evidence of malingering. Plaintiff has an exemplary work history accruing earnings every quarter for 21 years prior to the onset of her disability, Tr. 153-54, and she performed skilled labor with only a high school diploma, Tr. 36, 53. Additionally, Plaintiff made attempts to return to work prior to applying for disability, even asking Dr. Davies to allow her to return to work. Tr. 267. The ALJ failed to discuss this evidence, or indicate that it had been weighed against the evidence the ALJ found to discredit Plaintiff. Upon remand, the ALJ

Page 12 – ORDER

should take this evidence into account when making the final decision regarding Plaintiff's credibility.

## II.   The ALJ's failure to consider Dr. Davies opinion was not a harmless error because had the ALJ followed his recommendation, it would likely have affected the outcome of this case.

The ALJ failed to discuss Dr. Davies's opinion regarding Plaintiff's RFC. This cannot be considered a harmless error because Dr. Davies was Plaintiff's treating physician and the only physician who examined Plaintiff regarding her limitations. Had the ALJ considered this evidence, the ALJ may have come to an alternative decision.

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The medical opinion of a plaintiff's treating physician is entitled to "special weight" because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (citation omitted). The ALJ may reject the un-contradicted opinion of a treating or examining physician by providing clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). Further, an ALJ may reject a physician's opinion if it conflicts with the physician's other findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Although the contrary opinion of a

non-treating medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. *Magallanes*, 881 F.2d at 752.

It is well-established that "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957; *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions"). A "physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r.*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair*, 885 F.2d at 605); *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (affirming the rejection of a treating source's opinion that "relied only on [the plaintiff's] subjective complaints and on testing within [her] control").

Further, while an ALJ cannot reject the severity of subjective complaints solely on the lack of objective evidence, the ALJ may nonetheless look to the medical record for inconsistencies. *See Morgan*, 169 F.3d at 599-600. The ALJ is responsible for resolving conflicts in the medical testimony and translating the plaintiff's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

If the ALJ commits legal error, the court will uphold the decision where that error is harmless. *See, e.g., Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (the court has "long recognized that harmless error principles apply in the Social Security Act context"). An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Id.* Equally the

error is harmless "if the agency's path may reasonably be discerned," even if the agency "explains its decision with less than ideal clarity." *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004) (internal citation omitted).

Here, Dr. Davies opinion regarding Plaintiff's limitations should have been given "special weight" because he was her treating physician. However, the ALJ did not indicate that he had weighed Dr. Davies opinion upon coming to his final decision, nor did he provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Davies opinion.

The ALJ set out a detailed and thorough summary of Dr. Davies's notes, however, he did not provide specific and legitimate reasons for why the notes were in conflict with the clinical evidence indicated in the record. The ALJ included the following as evidence: (1) in August 2011, she was feeling better, and was optimistic; (2) in September 2011, she was experiencing pain with more than five minutes of standing and increased pain with walking; (3) in May 2012, she was experiencing weight gain and inactivity; (4) in September 2012, she had lost four pounds and was staying more active; (5) in January 2013, she was having "tremendous improvement" and her weight was down; and (6) in May 2013, she had gained four pounds and was a little depressed. Tr. 23-24. The ALJ did nothing more than list the above evidence without providing any interpretation or explanation as to how he came to the conclusion the evidence supported a finding that Plaintiff was not disabled.

The ALJ then gave "great weight" to Dr. Martin Kehrli's opinion, a non-examining physician employed by the state Disability Determination Services ("DDS"). Dr. Kehrli reviewed the medical record and opined that, despite Plaintiff's impairments—degenerative disk disease, diabetes mellitus, and obesity—she retained the ability to perform work in the light exertion range. Tr. 25. The ALJ found that this assessment was generally consistent with the

longitudinal record. *Id.* However, the ALJ did not explain his reasoning for giving Dr. Kehrli's opinion "great weight," nor did he provide specific and legitimate reasons for taking the opinion of a non-examining physician over that of a treating physician.

Further, upon review of the record, attached to Plaintiff's Request for Favorable On-The-Record Decision dated November 19, 2012, was a Physical Capacity Evaluation written by Dr. Davies. Tr. 105-111. Dr. Davies's report indicated Plaintiff had less than sedentary functional capacity, and found that she could sit, stand, and walk each for one hour per day; occasionally lift and carry up to ten pounds; occasionally reach above shoulder level; and never bend, squat, crawl, or climb. Tr. 108-111. The ALJ's failure to discuss this evaluation or provide clear and convincing reasons for why he gave "great weight" to Dr. Kehrli's opinion over the opinion provided by Dr. Davies is a clear error. Additionally, this error cannot be considered harmless because had the ALJ taken Dr. Davies opinion as true, the ALJ would likely have determined an alternative RFC for the Plaintiff.

## REMAND

"The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). Generally, when a court reverses an administrative decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings. *Rodriguez*, 876 F.2d at 763; *Smolen*, 80 F.3d at 1292.

In some circumstances, where the ALJ has improperly credited testimony or failed to consider it, the Ninth Circuit has credited the rejected testimony. *See Smolen*, 80 F.3d at 1292; *see also Lester*, 81 F.3d at 834. However, in *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003), the Ninth Circuit determined that the "crediting as true" doctrine is not mandatory and the court has some flexibility in applying the doctrine. On this record, the Court exercises its discretion and remands for further proceedings. *See Stout*, 454 F.3d at 1053–54, 1056–57; *Connett*, 340 F.3d at 876.

## ORDER

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and the matter is REMANDED for further administrative proceedings. Upon remand, the ALJ should:

(1) Reassess Plaintiff's credibility in light of the record. Should the ALJ determine her to not be credible, the ALJ shall provide clear and convincing reasons for doing so.

(2) Review and weigh Dr. Davies's opinion regarding Plaintiff's limitations when determining her RFC. After reviewing this evidence, should the ALJ decide to reject Dr. Davies opinion, he or she must provide specific and legitimate reasons for doing so.

(3) The ALJ should resolve the conflicting opinions provided by Dr. Davies and Dr. Kehrli regarding Plaintiff's limitations. The ALJ shall provide specific and legitimate reasons, supported by substantial evidence in the record, to support this resolution.

(4) If the ALJ credits Dr. Davies's opinion as true, the ALJ should present the vocational expert with a hypothetical scenario that includes the limitations set forth by Dr. Davies.

IT IS SO ORDERED.

DATED this 12 day of August 2016.

MARK D. CLARKE
United States Magistrate Judge